**Aaron FOX; Toni Fox, husband and wife, Plaintiffs–Appellants,**

v.

**CITICORP CREDIT SERVICES, INC., a South Dakota corporation; Jerold Kaplan; Jane Doe Kaplan, husband and wife, Defendants–Appellees.**

**No. 91–16476.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Feb. 1, 1994.

---

Esther B. Simon and Peter M. Balsino, Aron & Simon, Tucson, Arizona, for the plaintiffs-appellants.

John M. Iurino and Janet Napolitano, Lewis & Roca, Tucson, Arizona, for the defendants-appellees.

Before: FLETCHER, REINHARDT, and NOONAN, Circuit Judges.

REINHARDT, Circuit Judge:

Aaron and Toni Fox appeal the entry of summary judgment in favor of defendants on four claims of violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et seq., and on three state-law claims. We affirm summary judgment as to the Foxes' breach-of-contract claim, reverse summary judgment as to the other claims, and remand.

I. *Background*

In 1986, the Foxes defaulted on their credit card debt with an unpaid balance of $2300.31. Citibank referred the matter for collection to Citicorp Credit Services ("Citicorp"), which in turn retained attorney Jerold Kaplan. Kaplan, on behalf of Citicorp, filed an action against the Foxes in Maricopa County, Arizona. The Foxes, who reside in Pima County, Arizona, successfully moved to transfer the action. The action was dismissed without prejudice when Citicorp failed to pay a transmittal fee. Citicorp filed another suit in Maricopa County; like the preceding suit, it was transferred to Pima County. Eventually, in June 1989, the parties reached a stipulated judgment under which the Foxes were to pay $100 per month to pay off their debt.

The Foxes missed the initial payments. Ray Jacques, a Citicorp representative, contacted Toni Fox at her place of employment, and requested $400 to bring the payments current. A $400 check sent by the Foxes bounced, and Citicorp again contacted Toni Fox. In November 1989, Jacques informed her that the full balance was due and that Citicorp would proceed with garnishing her wages. Jacques then instructed Kaplan to proceed with garnishment. Kaplan apparently did not immediately do so.

In December 1989, another Citicorp representative, Arlene Marshall, newly assigned to the Fox account, contacted Toni Fox. Marshall indicated that Fox would have to express mail a $100 check within a week, and warned her that future failure to comply with payment arrangements would result in the full balance being due or payments being increased from $100 to $200 per month. The Foxes remitted $100.

The Foxes also sent $100 in January. Nonetheless, Marshall called Toni Fox after the payment was received, and told her that an additional $200 was needed or Citicorp would refer the account for garnishment. The Foxes contend that Toni Fox and Marshall agreed upon a new permanent payment schedule of $200 per month. Marshall then sent a request to Kaplan to proceed with garnishment if Citicorp did not instruct him otherwise by January 30, 1990.[1] The Foxes

___

1. Under Citicorp's own version of the facts, both Jacques and Marshall referred the Foxes' account to Kaplan for garnishment at different times.

sent the $200. Toni Fox testified at her deposition that each time Marshall called, the tone was threatening and intimidating.

Although the Foxes again sent $200 in February—and were thus current in their payments—Kaplan was never contacted by Citicorp. He therefore proceeded with garnishment in February 1990. He sent a letter to Toni Fox indicating his intention to garnish her wages. The Foxes' attorney, Terry Aron, contacted Kaplan's office by telephone. By subsequent letter, Aron confirmed his understanding that no further action would be taken without first contacting him. Kaplan faxed a copy of the letter back to Aron with a handwritten note asking him to fax information about the Foxes' past payments to Kaplan's office. The note also stated that Kaplan would be out of the office until March 5, 1990.

Having received nothing from Aron, Kaplan filed an application for a writ of garnishment in the Maricopa County court on March 5, 1990. The writ issued and was served on Toni Fox's employer on March 8, 1990. Aron sent Kaplan letters regarding the Foxes' payments on March 6 and March 8. On March 8, 1990, realizing the Foxes were current in their payments, Kaplan quashed the writ of garnishment.

The Foxes brought suit against Citicorp and Kaplan under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and under Arizona state law. The complaint alleged five FDCPA claims and seven state-law claims. Citicorp and Kaplan moved for summary judgment on all claims. On September 3, 1991, in a tersely-worded order, the district court granted summary judgment on all claims. The Foxes now appeal the grant of summary judgment on four FDCPA claims and three state-law claims.[2]

## II. *Violation of FDCPA Venue Provision*

Claim one in the Foxes' complaint alleges that both Citicorp and Kaplan violated the FDCPA by filing the March 1990 application for a writ of garnishment in the Maricopa County Superior Court rather than in Pima County where the Foxes reside.[3] The parties agree that a violation of the venue provision may support civil liability. *See* 15 U.S.C. § 1692k. Section 1692i requires that a debt collector's legal action on a debt against a consumer be brought:

> . . . only in the judicial district or similar legal entity—
>
> (A) in which such consumer signed the contract sued upon; or
>
> (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a)(2). The defendants concede that Maricopa County is neither the county in which the Foxes reside nor the county in which they signed any contract sued upon.

Nonetheless, the defendants raise several arguments in support of the entry of summary judgment on claim one. Some of these defenses are generally applicable to all FDCPA claims, while others are defenses specific to the venue claim. We address each of these contentions in turn, beginning with the theory adopted by the district court.

### A. *Exemption for Kaplan's "Purely Legal" Activity*

Expressing concern that Kaplan may have violated the venue provision, the district court stated in its order that the FDCPA does not reach "a pure legal action." Of course, as a general matter, 15 U.S.C. § 1692i plainly reaches "legal actions," specifying that actions by debt collectors against consumers must be brought in judicial districts to which the consumer has a specified

---

**2.** The Foxes do not appeal summary judgment on one FDCPA claim and on state-law claims of abuse of process, malicious prosecution, invasion of privacy, and intentional infliction of mental anguish.

**3.** The complaint also alleges that the defendants violated the venue provisions by filing the two 1986 actions in Maricopa County. The Foxes

concede that the statute of limitations bars FDCPA claims on these filings. *See* 15 U.S.C. § 1692k(d) (action must be brought within one year of violation). Nonetheless, they argue persuasively that the transfer of the two actions establishes the defendants' awareness that the statutorily proper venue for actions against the Foxes was Pima County.

tie. It is clear from the record, however, that what the district court had in mind was that *attorneys* engaged in activity of a "purely legal" nature were exempted from the statutory prohibitions. That is the theory upon which Kaplan relied. The argued exemption has its roots in the now-defunct all-purpose FDCPA attorney exemption.

As originally enacted in 1977, the FDCPA specifically excluded from the definition of "debt collector" "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." 15 U.S.C. § 1692a(6)(F) (repealed 1986). In 1986, however, concerned that "attorneys have increasingly entered the debt collection business and used the exemption to evade compliance with the Act," Congress deleted the attorney provision. H.Rep. No. 405, 99th Cong., 1st Sess. 1–2 (1985), *reprinted in* 1986 U.S.C.C.A.N. 1752, 1752. Kaplan argues that, in repealing the provision, the legislature intended that the statute would thereafter apply to attorneys engaged in traditional collection practices of a non-legal nature but not to those engaged in purely legal activities—activities that can only be performed by an attorney—such as the filing of an application for a writ of garnishment.

Kaplan relies upon two district court decisions interpreting the legislative history of the 1986 attorney-exemption repeal. *See Firemen's Ins. Co. v. Keating,* 753 F.Supp. 1137, 1141–44 (S.D.N.Y.1990); *National Union Fire Ins. Co. v. Hartel,* 741 F.Supp. 1139, 1140–41 (S.D.N.Y.1990); *see also Green v. Hocking,* 792 F.Supp. 1064, 1065–66 (E.D.Mich.1992). These cases conclude that the Congress did not intend to expose to FDCPA liability "those attorneys acting in the role of legal counsel while representing clients." *Keating,* 753 F.Supp. at 1142; *see also Green,* 792 F.Supp. at 1065 (concluding that literal application of "debt collector" definition is at odds with legislative intent). On the basis of this perceived congressional intent, these cases hold that attorneys "engaged in activities only of a purely legal nature" are not "debt collectors" under the FDCPA. *Hartel,* 741 F.Supp. at 1141.

■ We decline to adopt this "phantom limb" theory of statutory interpretation—al-lowing an excised provision to continue to determine the scope of a statute. We are unwilling to assume that the Congress acted contrary to its intentions when it repealed the attorney exemption and enacted no substitute. Like the only other circuit to consider this creative residual attorney-exception, we conclude that it simply does not exist. The plain language of the statute unambiguously precludes any continued doctrine of special treatment for attorneys under the FDCPA. *See Scott v. Jones,* 964 F.2d 314 (4th Cir.1992).

■ In short, the attorney exemption is no longer a part of the statute; the fact that it was *once* a part of the statute does not alter the *required* approach to statutory construction. Applying our general rules of statutory construction to the FDCPA freed from the repealed limitation, neither the plain language of the Act nor its structure supports any exemption for attorneys' "purely legal" debt collection activities. *See, e.g., Sacramento Regional County Sanitation Dist. v. Reilly,* 905 F.2d 1262, 1268 (9th Cir.1990) (plain language is starting point of statutory construction); *Seldovia Native Ass'n v. Lujan,* 904 F.2d 1335, 1341 (9th Cir.1990) (to determine plain meaning court must look to language and design of statute as whole). There is simply no mention of attorneys in the current definition of "debt collector" or its exceptions; nor is there any distinction drawn between legal and non-legal activities. Nothing currently in the text of the FDCPA hints at the conspicuous solicitude for the legal profession that Kaplan proposes.

Looking to the legislative history of the 1986 repeal, we do not find the clearly-expressed contrary intention necessary to overcome "the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1214 n. 12, 94 L.Ed.2d 434 (1987). The district court decisions cited by Kaplan rely primarily upon an individual legislator's statements that the repeal would not interfere with the practice of law. *See Keating,* 753 F.Supp. at 1142–43; *Hartel,* 741 F.Supp. at 1141. These isolated statements, however, cannot reintroduce what the Congress has eliminated; if the

legislature intended some residuum of the attorney exemption to remain valid, it is very unlikely that it would have entirely excised the provision without enacting *any* substitute. Moreover, Congress was almost certainly aware that the general definition of "debt collector," requiring that debt collection be either a "principal purpose" or a regular part of the collector's business, would protect a substantial percentage of attorneys in ordinary legal practice, and that adding a special protection for "purely legal" activity would undermine its efforts to curb the unfair practices of those engaged in the business of debt collection.

Indeed, other portions of the legislative history make it clear that Congress intended "purely legal" activities of attorneys who fall within the definition of "debt collector" to be subject to the FDCPA. Specifically, Kaplan's proposed exemption would effectively immunize attorneys from liability under the venue provision, which *solely* applies to legal actions; however, the Congress intended "that attorneys in the business of collecting debts be subject to *all provisions* of the Act, if they meet the definition of debt collector." House Report 405, at 3, 1986 U.S.C.C.A.N. at 1754. Moreover, in describing the need for repeal of the attorney exemption, the House Committee excerpted, as an example of attorneys' unfair competitive advantage over lay collectors, an advertisement by a lawyer emphasizing his ability, as a result of his exemption from the venue provision, to file suits in courts more convenient for the creditor. *See* House Report 405, at 5. The committee's interest in eliminating the type of unfair competition exemplified by this advertisement is inconsistent with the residual exemption urged by Kaplan.

■ Of somewhat more concern than the equivocal legislative history of the 1986 FDCPA amendment is commentary issued by the Federal Trade Commission (FTC) concluding that attorneys "that engage in traditional debt collection activities (sending dunning letters, making collection calls to consumers) are covered by the FDCPA, but those whose practice is limited to legal activities are not covered." 53 Fed.Reg. 50,097, 50,100 (1988). Initially, we note that this commentary supports the exemption adopted by the trial court only obliquely. There is a distinction between the contention that *any* attorney is exempt from FDCPA liability for a "purely legal" act and the contention that an attorney is exempt from all FDCPA liability only if he never engages in *any* acts other than "purely legal" actions. We address the former, which is the argument made by Kaplan and accepted by the district court, while the FTC commentary seems to endorse the latter. Kaplan did not contend nor present evidence that he *never* engages in debt collection activities that are not "purely legal." Nonetheless, even if the FTC commentary offers some support for Kaplan's contention, we join the Fourth Circuit in declining to adopt the position in the FTC commentary because it conflicts with the plain language of the statute.[4] *See Scott,* 964 F.2d at 317.

■ We thus reject the district court's conclusion that Kaplan is not covered by the FDCPA because the filing of an application for a writ of garnishment is a "pure legal action." Attorneys, like all other persons, are subject to the definition of "debt collector" in 15 U.S.C. § 1692a(6). Here, there is no question that Kaplan "regularly collects or attempts to collect, directly or indirectly, debts owed or due ... another."[5] Kaplan falls within the definition of "debt collector" under the FDCPA.

**4.** We note that the FTC has stated that its FDCPA commentary is "not a formal trade regulation rule or advisory opinion of the Commission, and thus is not binding on the Commission or the public." 53 Fed.Reg. at 50,101. Previously, we have also noted the limited precedential value of FTC pronouncements regarding the FDCPA in light of the restricted scope of its power under the Act. *See Pressley v. Capital Credit & Collection Service,* 760 F.2d 922, 925 & n. 2 (9th Cir.1985).

**5.** At his deposition, Kaplan stated that 98 to 100 percent of his practice from 1989 to 1991, and 80 percent from 1986 to 1989, was in the area of collection. *Cf. Scott,* 964 F.2d at 316 (concluding that principal purpose of attorney's business was debt collection where 70–80 percent of legal fees were generated by such work).

### B. *Bona Fide Error Defense*

■■■ The defendants argue that no FDCPA claims based on the application for a writ of garnishment can survive because their actions fall under the Act's "bona fide error" exception. 15 U.S.C. § 1692k(c) provides that a debt collector may not be held liable "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such an error." [6]

Citicorp argues that the application for a writ of garnishment would not even have been filed had Pat Sanchez, the Citicorp agent assigned to the Fox account after Marshall, been aware that Marshall had instructed Kaplan to proceed with garnishment if not notified otherwise by January 31, 1990. Sanchez succeeded Marshall as the agent assigned to the Foxes when Citicorp transferred all Arizona accounts from its San Mateo, California office to its Albuquerque office. Citicorp contends that Sanchez was not aware of Marshall's instruction to Kaplan because the computerized account notes did not indicate the instruction, and because the arrival of the hard-copy account file was delayed during the February 1990 transfer of accounts from San Mateo to Albuquerque. But for this inadvertent delay, according to Citicorp, Sanchez would have cancelled the garnishment once she determined that the Foxes were making payments.

■■■ The language of section 1692k(c) indicates that the bona fide error exception is an affirmative defense, for which Citicorp has the burden of proof at trial. However, Citicorp failed to produce any evidence showing "the maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1692k(c). For example, it provided no indication of any procedure to ensure that all pertinent information would be expeditiously transmitted during a transfer of accounts from one office to another. Nor did it demonstrate any policy to ensure that pertinent information is readily imparted to agents newly-assigned to existing accounts. In the absence of any evidence supporting the existence of "reasonable preventive procedures," an essential element of the bona fide error exception, Citicorp is not entitled to summary judgment on the basis of the affirmative defense.

### C. *In–House Collector Exemption*

Citicorp argues that, as an in-house collector, it is not a "debt collector" under the FDCPA. Under 15 U.S.C. § 1692a(6)(B), the term "debt collector" does not include those collecting debts for corporate affiliates "if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts."

■■■ Citicorp did not raise the in-house collector exemption issue in moving for summary judgment, and the district court did not consider it. Moreover, determining whether section 1692a(6)(B) applies to Citicorp requires several factual determinations. Because Citicorp did not raise the issue before the district court, the Foxes have not had a chance to demonstrate the existence of a material factual dispute as to whether Citicorp is affiliated with the actual creditor, as to whether Citicorp collects debts for non-affiliated entities, or as to whether debt collection is Citicorp's principal business.[7] We

---

**6.** Although the district court did not base its award of summary judgment on this provision, we may affirm judgment on any basis supported by the record. *See Shaw v. California Dept. of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986). The Foxes contend that we should not consider this issue because Citicorp only raised it in the district court in its reply brief in support of summary judgment. Ordinarily, such tardy presentation of an issue would raise serious questions of fairness because the non-moving party would have had no chance to respond to contentions raised initially in reply. Here, however, the Foxes filed a supplemental opposition and supplemental statement of facts with supporting exhibits after they received Citicorp's reply. Thus, the issue was raised and argued by both parties in the district court. We therefore consider it here.

**7.** Nor will we assume, as Citicorp urges, on the basis of the several-years-old finding of a district court in another circuit, that Citicorp qualifies for the in-house exemption. *See Meads v. Citicorp Credit Services, Inc.,* 686 F.Supp. 330, 333–34 (S.D.Ga.1988) (finding that Citicorp falls under exemption).

are unable to conclude that Citicorp necessarily falls under the in-house exemption and decline to affirm summary judgment on that basis.

### D. *Other Defenses to Venue Provision Violation*

▉▉ Citicorp and Kaplan make three additional arguments in support of the entry of summary judgment on claim one. The defendants raise each of these arguments for the first time on appeal. Nonetheless, because each contention raises a pure issue of law, we consider them in deciding whether to affirm summary judgment. *See Jovanovich v. United States,* 813 F.2d 1035, 1037 (9th Cir.1987) (exceptions to general rule against considering issues for first time on appeal).

#### 1. *Enforcement–Action Exemption from Venue Provision*

▉▉ First, Citicorp contends that the application for a writ of garnishment, as an action in enforcement of a previously-obtained judgment, does not fall within the venue provision. By its terms, section 1692i reaches "any legal action on a debt." The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction ... primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Thus, the June 1989 stipulated judgment was entered in a legal action based upon a "debt" as defined in the FDCPA. Furthermore, the definition of "debt" specifically states that it applies "whether or not such obligation has been reduced to judgment." *Id.* Nonetheless, Citicorp contends that the application for a writ of garnishment is not a "legal action on a debt" for purposes of section 1692i.

The plain meaning of the term "legal action" encompasses all judicial proceedings, including those in enforcement of a previously-adjudicated right. *Cf. S & M Investment Co. v. Tahoe Regional Planning Authority,* 911 F.2d 324, 326–27 (9th Cir.1990) (construing term "legal action" as used in interstate

compact), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991). Because "debt" includes obligations reduced to judgment, any judicial proceeding relating to such a judgment constitutes a "legal action on a debt."

Moreover, the purpose of the venue provision supports our rejection of an enforcement-action exception. In enacting the provision, Congress was concerned about consumers having to defend against suits in "distant or inconvenient" courts. S.Rep. No. 382, 95th Cong., 1st Sess. 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. Consumers face similar burdens in defending against enforcement actions. Here, for example, had the writ not been quashed, the Foxes would have had to move for its quashing or defend against the amount of garnishment in a distant court. We find no indication that Congress intended to exclude enforcement actions, entailing the same concerns as initial adjudications, from the venue provision. Accordingly, we conclude that such actions are subject to section 1692i.[8]

#### 2. *Separate Judicial Districts*

▉▉ Second, the defendants argue that Maricopa County and Pima County are not separate "judicial districts"; therefore, filing the application in the former rather than in the latter establishes no venue violation. Section 1692i specifies "judicial district or similar legal entity." We have no difficulty in concluding that the two counties are different venues under the FDCPA where the state has provided a formal transfer mechanism (as utilized in Citicorp's two 1986 actions against the Foxes) between courts in the two counties. The fact that, as the defendants argue, the state of Arizona constitutes a single federal judicial district and has a unitary state superior court has no effect on our conclusion. *See Dutton v. Wolhar,* 809 F.Supp. 1130, 1139 (D.Del.1992) (rejecting similar contention).

Nonetheless, as with the "pure legal action" exemption issue, we conclude that the plain language of the statute compels our decision.

---

**8.** Our holding here may be in tension with the FTC's non-binding commentary. *See* 53 Fed. Reg. at 50,109 (judgment obtained in proper forum may be enforced in another jurisdiction).

### 3. *Vicarious Liability*

Third, Citicorp contends that it may not be held vicariously liable under section 1692i for a venue decision made solely by Kaplan. We reject this contention as inconsistent with the structure of the FDCPA. As noted above, the FDCPA initially contained an all-purpose attorney exemption. If we were to conclude, as Citicorp urges, that debt collectors are shielded from liability for venue violations whenever a legal action is filed by an attorney, we would have to decide that section 1692i was superfluous as originally enacted. Under Citicorp's theory, for the first nine years after the FDCPA became law, no attorney could *ever* have been liable and no collector could have been *vicariously* liable for the actions of his attorney; therefore, liability could rarely if ever have rested on a venue violation.[9] In order to give reasonable effect to section 1692i, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.

Having concluded that none of the defendants' general or specific arguments in favor of affirming summary judgment are valid, we reverse the entry of summary judgment on claim one and direct the district court to reinstate the Foxes' claim that Citicorp and Kaplan violated the FDCPA venue provision.

### III. *Other FDCPA Claims*

The Foxes' complaint also alleged three other FDCPA claims under section 1692d, proscribing "conduct the natural consequence of which is to harass, oppress, or abuse any person"; section 1692e, prohibiting the use of any "false, deceptive, or misleading representation or means"; and section 1692f, forbidding "unfair or unconscionable means to collect or attempt to collect any debt." Each of these provisions includes a non-exhaustive list of examples of proscribed conduct. The conduct alleged in the Foxes' complaint does not fall neatly within any of these specified

examples. The district court based summary judgment on these three claims on its conclusion that the Foxes "failed to demonstrate that the actions of Citicorp employees were unreasonable."

We begin by noting that the district court's brief statement regarding the reasonableness of the defendant's actions states an incorrect standard. The FDCPA is not simply a federal codification of common-law negligence. Rather, each section specifies what kind of conduct supports FDCPA liability. We believe the Foxes met their burden of showing the existence of facts or disputed factual evidence upon which a rational jury could premise liability.

As to section 1692d, Toni Fox testified in her deposition that Citicorp agent Marshall was intimidating and threatening in her phone communications with Fox. Aaron Fox confirmed this tone and manner based upon one phone conversation he had with Marshall. Moreover, in her deposition, Toni Fox described threats of garnishment accompanied by demands for overnight sending of payments. She also testified that Marshall called her at work after she had twice requested, once to Marshall and once to the predecessor agent, that she not be phoned at her place of employment.[10] Threatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct. We reverse the entry of summary judgment on the Foxes' 1692d claim.

Section 1692e proscribes "false, deceptive, or misleading representations or means," including "[t]he threat to take any action ... that is not intended to be taken." 15 U.S.C. § 1692e(5). Here, according to Toni Fox's deposition testimony, she was told by one Citicorp agent that the full balance of her debt was due and that Citicorp would proceed with garnishment; next, she was

---

9. Liability could have existed only if a pro se who qualified as a debt collector filed the action.

10. Communications at a place known to be inconvenient to the consumer may also violate 15 U.S.C. § 1692c(a)(1). However, it is not unusual for an action to violate more than one FDCPA

provision. *See* 53 Fed.Reg. at 50,109 (FTC commentary) (in many cases, several different FDCPA sections may apply to given factual situation). Thus, even absent a separate 1692c claim, we conclude that this conduct may be relevant to a harassment claim.

contacted by another agent who asked her to pay the regular monthly charge of $100 within a week and warned her to pay that amount each month thereafter. She complied with the request and made the next monthly payment as well. Nonetheless, the agent called again, demanded an increased payment and once again threatened garnishment. Finally, Citicorp's lawyer filed the garnishment without a promised prior contact with the Foxes' lawyer. This course of conduct raises a factual question regarding the defendants' intent. Such contradictory and inaccurate communications could rationally support a jury finding that Citicorp used deceptive or misleading means in connection with the collection of a debt. We therefore reverse summary judgment on the Foxes' 1692e claim.

■ Finally, a jury could rationally find the filing of an application for a writ of garnishment when the Foxes were current in payments demanded by Citicorp agents to constitute an unfair or unconscionable means of collection or attempted collection of a debt under section 1692f. Although the defendants may ultimately be able to prove that the garnishment was a result of bona fide error, they have not, as discussed above, met their burden on summary judgment to prevail on such an affirmative defense. Accordingly, summary judgment must be reversed on the 1692f claim as well.

Our comments should not be construed as limiting any other theories that may support recovery under these FDCPA claims. We have merely identified some theories, supported either by facts conceded by the defendants or by evidence submitted by the Foxes, which could rationally sustain a verdict for the Foxes, in order to demonstrate the inappropriateness of summary judgment. We reverse summary judgment on each of the FDCPA claims.

## IV. State–Law Claims

■ The parties agree that the Foxes' appeal of summary judgment on claims eight and nine of the complaint, alleging state-law

claims of negligence and strict liability, rests upon our resolution of the FDCPA claims. The parties have not separately addressed these claims; instead, they have asserted that as go the FDCPA claims, so go claims eight and nine. Therefore, having reversed summary judgment on all of the appealed FDCPA claims,[11] we similarly reverse judgment on claims eight and nine.

The Foxes appeal the entry of summary judgment on one additional state-law claim—claim ten, alleging breach of contract. The complaint alleges that Citicorp breached its obligations under the 1986 stipulated judgment by filing for a writ of garnishment. The problem, however, as the Foxes soon realized, is that their prior breach of the agreement (by failing to make timely payments) prevents their succeeding on this claim. Thus, in opposing summary judgment, the Foxes argued that Citicorp had breached its obligations under a new arrangement, agreed to by Marshall on behalf of Citicorp, under which they would pay $200 per month rather than $100. Citicorp then argued, and the district court agreed, that no consideration supported the new contract sued upon by the Foxes. The Foxes contend that the acceleration in payment schedule constituted consideration. The dispute involves a question of Arizona law that it is not necessary for us to resolve.

We affirm the entry of summary judgment on the alternative basis argued by Citicorp in the district court. The Foxes failed to put forward evidence of any contractual damages. All they claimed was emotional distress and mental anguish. The Foxes may well have claims for statutory[12] or tortious damages, but they showed no damages of a contractual nature.

## V. Conclusion

We affirm summary judgment on the Foxes' breach-of-contract claim (claim ten), reverse summary judgment on all other appealed claims (claims one, two, three, four, eight,

---

11. As noted above, the Foxes do not appeal the entry of summary judgment on one FDCPA claim, alleging violation of 15 U.S.C. § 1692c.

12. Under 15 U.S.C. § 1692k(a)(2)(A), the court may award up to $1000 in damages above actual damages.

and nine), and remand for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

NOONAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment of the court that the defendants were entitled to summary judgment on the contract claims and were not entitled to summary judgment on the Foxes' claims for violation of the venue provision of the FDCPA and that the defendants' affirmative defenses must be established at trial.

The Foxes may get before a jury on these two claims. But what mountains have been made of molehills! And the Foxes have sought $10 million punitive damages without in their deposition being able to identify any basis for such an extraordinary request. How this court regards inflated claims for punitives is well-established. *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir.1988). I turn to the claims on which I disagree with the majority:

*The Alleged Abusive Conduct.*

15 U.S.C. § 1692d sets out six examples of conduct that violates the section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone

calls without meaningful disclosure of the caller's identity.

The statute does not limit its general application to these examples. However, normal rules of statutory construction require that the harassment or abuse condemned be of the same nature as the examples the statute supplies. The Foxes provided no testimony showing that the defendants' conduct was of this quality. At most, Toni Fox could recall a telephone call from a Citicorp agent whose voice she described as "intimidating," "aggressive," "threatening" or "not nice." At the point she received this call the Foxes had failed for over three years to pay the debts due on their Citibank credit cards. Several months before the telephone call the Foxes had agreed to a stipulated judgment requiring them to pay the full unpaid balance of $2,300.31 in monthly installments of $100 apiece, with the additional stipulation that if the payments were not timely made the entire judgment, plus interest, court costs, and attorneys' fees would be due. Months went by without the Foxes paying a penny. Under these circumstances a telephone call from a representative of Citibank would have been very intimidating, and her voice would have sounded "not nice." It might even have been considered "aggressive." There is nothing in the statute that restrains a creditor from attempting to collect from a delinquent debtor or makes a reminder to the debtor an act of harassment.

*The Alleged Misrepresentations*

15 U.S.C. § 1692e prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt." Sixteen examples are then provided of conduct that would violate the statute. None of the acts that the Foxes say Citicorp performed falls within the conduct described or is comparable to such conduct.

The Foxes had agreed in the stipulated judgment to payment of their debt in full upon failure to pay the monthly installments of $100. Consequently, there was no misrepresentation when Toni Fox was told that the full balance of her debt was due; nor was there any misrepresentation when another agent asked the Foxes to pay $100 per month that they had promised to pay; nor

was there any misrepresentation when the agent asked them to make up for the payments that had not been paid. Two of the calls from the Citibank representatives threatened garnishment. It would have been lawful for Citibank to garnish the Foxes' wages. The Foxes offered no evidence that Citibank did not intend to proceed with garnishment if the Foxes remained delinquent; and, of course, Citibank did in fact proceed with garnishment.

The opinion of the court notes the contention of Aron, the Foxes' lawyer, that Kaplan would not proceed with garnishment without contacting Aron. There is no indication that Kaplan had in fact agreed. Rather, Aron's self-serving statement is refuted by Kaplan's reply to him by fax that he would first like to see the records showing the status of the Foxes' payments. There is no genuine material fact in dispute, no evidence that Kaplan had promised not to file the garnishment. *The Alleged Unfair Practices.*

15 U.S.C. § 1692f prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." Eight examples are furnished of conduct violative of this section. No evidence has been offered of any conduct by the defendants in the least comparable with the conduct condemned.

The opinion of the court takes the position that the filing of an application for a writ of garnishment "when the Foxes were current in payments demanded by Citicorp agents" could be found to be an unfair or unconscionable means of collecting. According to the stipulated judgment, as of March 5, 1990, the Foxes should have paid Citicorp $1,000. In fact they had paid nothing from September through October and had given one bad check for $400. As of March, 1990, they had paid only $400 of what they had stipulated by judgment to pay. At this time, they were, of course, liable for the full $2,300 plus interest, court costs and attorneys' fees. In these circumstances the Foxes were not protected from having their wages garnished.