**John F. FINNEGAN III, Plaintiff,**

v.

**UNIVERSITY OF ROCHESTER MEDICAL CENTER, a/k/a Strong Memorial Hospital; CBC Companies, Inc., d/b/a Credit Bureau Affiliates; and Rochester Credit Center, Inc., a/k/a the Credit Bureau, Inc., Defendants.**

**No. 97–CV–0406C(Sc).**

United States District Court,
W.D. New York.

Aug. 7, 1998.

Trevor M. Fuller, Falls Church, VA, for Plaintiff.

Hallenbeck, Lascell, Norris & Zorn, LLP, Rochester, NY (John R. Simon, of counsel), for Defendant University of Rochester Medical Center.

Gullace & Weld, Rochester, NY, (Allen D. Friedman, of counsel), for Defendant CBC Companies, Inc.

Lacy, Katzen, Ryen & Mittleman, LLP, Rochester, NY, (Denine K. Carr, of counsel), for Defendant Rochester Credit Center, Inc., a/k/a The Credit Bureau, Inc.

## INTRODUCTION

CURTIN, District Judge.

Before the court are defendants' motions to dismiss (Items 6, 10, 19) plaintiff's amended complaint (Item 5) pursuant to Fed. R.Civ.P. 12. Plaintiff has responded (Items 14, 23), and defendants have replied (Items 15, 16, 24). Defendants appeared before this court for oral argument on January 16, 1998, and plaintiff participated by telephone.

## BACKGROUND

Plaintiff was treated at defendant University of Rochester Medical Center's Strong Memorial Hospital ("Hospital") for a variety of physical and neurological ailments from February through June 1995. Plaintiff was treated by more than ten physicians, technical therapists, and other health care professionals. Plaintiff claims that the cost of these treatments totaled over $50,000 (Item 5, Amended Complaint, ¶ 16).

On or about June 21, 1995, plaintiff felt that defendant Hospital's treatment was not adequate, and so he sought another opinion at somewhere other than defendant Hospital. From June 21, 1995, to March 22, 1996, defendant Hospital billed plaintiff directly for the medical services that it provided to him from February through June 1995 (Item 22, Declaration of Plaintiff, ¶ 7). Many, but not all, of these bills were paid by plaintiff's health insurer, Blue Cross/Blue Shield, and by Medicaid (Item 5, ¶ 16). When plaintiff initially received these bills, he claims that he immediately called defendant Hospital about reconciling his bills (Item 22, ¶ 8).

Plaintiff explained to Ms. Palmer in the Hospital's Patient Accounts Office that he had filed a claim for disability benefits with the United States Department of Health and Human Services, Social Security Administration, prior to his treatment at the Hospital. While his claim was initially denied and his petition for reconsideration was rejected, plaintiff then explained to Ms. Palmer that his administrative appeal was still pending. Plaintiff claims that as a result of his dialogue with Ms. Palmer and then with Ms. Anna Sheridan, a supervisor in the Patient Accounts Office, defendant Hospital agreed to forbear the collection of any of his accounts until his appeal with the Social Security Administration was resolved (*Id.*).

On March 22, 1996, plaintiff received notification that his appeal was successful and that he was adjudged totally disabled. Plaintiff claims that he immediately began to arrange for payment to defendant Hospital when his first Social Security Administration benefits arrived (*Id.*, ¶ 10). However, plaintiff brings this lawsuit because he claims that he learned sometime in April 1996 that defendant Hospital sent his account to be handled by at least two collection agencies, defendant Rochester Credit Center, Inc., d/b/a The Credit Bureau ("RCC"), and defendant CBC Companies, Inc., d/b/a Credit Bureau Affiliates ("CBA").[1] Plaintiff argues that defendant Hospital reneged, as early as December 1995, on its oral agreement to forbear collecting payments until after his appeal was resolved (*Id.*, ¶ 9; Item 5, ¶ 22).

Plaintiff also claims that on at least two occasions, he paid what he thought was his last bill from defendant Hospital, and then thereafter received another bill for "additional expenses." He states that while he sent at

---

1. Plaintiff alleges that Credit Bureau Affiliates is a d/b/a of CBC Companies, Inc., an Ohio Corporation. However, defendant CBC Companies, Inc., states that this is incorrect and Credit Bureau Affiliates is a d/b/a of Albany Credit Bureau, Inc., a New York Corporation. While defendant CBC Companies, Inc., originally argued that plaintiff has failed to obtain jurisdiction over the correct defendant, at oral argument CBC stipulated to being sued.

least 15 letters (Item 22, Exh. A) repeatedly asking for a full accounting and disputing the amounts that defendant Hospital claimed were owed, at no time was he ever given a final statement of account from defendant Hospital. Plaintiff states that he paid defendant Hospital over $5,000, but that he should not have paid any of this because his medical treatment was covered by Blue Cross/Blue Shield and Medicaid.

Plaintiff argues that defendant Hospital acted in bad faith by giving negative reports to credit reporting agencies which resulted in derogatory information appearing on his credit report (Item 5, ¶ 23). In addition, plaintiff claims that on or about December 31, 1996, his attorney obtained a verbal commitment from Hank Fagan, a credit manager at defendant Hospital, to remove the derogatory information from his credit report (Item 5, ¶ 27; Item 22, ¶ 19). However, plaintiff alleges that this verbal commitment was never honored and has caused problems. Plaintiff and his wife have had numerous difficulties in their attempts to purchase a new home due to this wrongfully recorded, negative credit information (Item 5, ¶ 31). Plaintiff claims that defendants' actions have caused him not to get approved for a mortgage that he would otherwise be entitled to and that he has suffered significant physical and emotional injuries.

Plaintiff claims that defendants RCC and CBA pursued debt collection against him even though he was repeatedly disputing the amount owed. Also, plaintiff claims that both defendants RCC and CBA sent several dunning letters to plaintiff, but that when he spoke with representatives at both collection agencies, no one could verify the accuracy of the amount which was being collected. Supposedly, both defendants RCC and CBA referred plaintiff back to defendant Hospital to confirm the amount that he owed.

After plaintiff was unable to resolve these problems, he filed his original complaint in this court on May 16, 1997, against defendants Hospital, RCC, and CBA (Item 1). On July 11, 1997, plaintiff amended his complaint as to defendant RCC, because the original complaint only sued "The Credit Bureau, Inc." and not "Rochester Credit Center, Inc.

d/b/a The Credit Bureau." Plaintiff's amended complaint alleges six causes of action (Item 5).

Plaintiff's first four causes of action are against defendant Hospital. The first consists of both federal and state law claims and alleges violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.*, New York General Business Law § 701, *et seq.*, and New York General Business Law § 349 (*Id.*, ¶ 34). The second, third, and fourth causes of action against defendant Hospital all allege state law claims. The second alleges breach of contract (*Id.*, ¶ 37). The third alleges negligence (*Id.*, ¶ 40). The fourth alleges negligent infliction of emotional distress (*Id.*, ¶ 43).

The fifth and sixth causes of action are against defendants RCC and CBA. The fifth consists of both federal and state law claims and alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and Article 29–H of the New York General Business Law (*Id.*, ¶ 46). The sixth is a state law claim which alleges negligence (*Id.*, ¶ 49).

On July 18, 1997, defendant Hospital filed a motion to dismiss in lieu of an answer (Item 6). On August 4, 1997, defendant RCC filed a motion to dismiss plaintiff's amended complaint (Item 10). On October 30, 1997, defendant CBA filed a motion to dismiss plaintiff's amended complaint (Item 19).

### DISCUSSION

In ruling on a motion to dismiss, it is well established that the court must view the complaint in the light most favorable to the plaintiff. *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Furthermore, the court "must accept as true all the factual allegations in the complaint." *Newman*, 102 F.3d at 662 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). A motion to dismiss can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## I. Defendant Hospital

### A. Federal Claim

#### i. The Fair Credit Billing Act

██ Defendant Hospital argues that plaintiff's first cause of action should be dismissed because the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666–1666j, does not apply to it. In *Bright v. Ball Memorial Hospital Ass'n, Inc.,* 616 F.2d 328, 339 (7th Cir.1980), the Seventh Circuit held that "even though the Hospital may have been a potential 'creditor' under the Act [FCBA] in its offering the extension of credit to the appellants, the disclosure obligations imposed by the Act did not arise as to them." The Seventh Circuit reasoned that the FCBA does not apply to the Hospital because monthly charges assessed against patient accounts by the Hospital did not constitute a credit transaction but rather were "late payment" charges under Regulation Z of the Truth in Lending Act. *Id.* 616 F.2d at 336–39. Similar to the hospital in *Bright,* defendant Hospital is not covered by the FCBA.

Furthermore, a review of the legislative history indicates that Congress did not intend hospitals to be covered by the FCBA. The "creditors" which Congress intended to be covered by the FCBA included "furniture dealers, auto dealers, appliance, hardware, sporting goods and music stores, banks, loan firms, and other sellers and lenders." *See* Act of May 29, 1968, Pub.L. No. 90–321 (82 Stat. 146) 1968 U.S.C.C.A.N. 1962, 1993. Arguably, hospitals are not mentioned as "creditors" in the legislative history because hospitals do not "regularly extend[ ] . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required" as is required by 15 U.S.C. § 1602(f).

Even if plaintiff worked out an arrangement with defendant Hospital to reconcile all of his bills as plaintiff has claimed, this arrangement is merely an informal workout arrangement, and not within the coverage of the FCBA. *See Bright,* 616 F.2d at 335. "This agreement, also entered without a new written evidence of [plaintiff]'s indebtedness and at a time when the Hospital clearly regarded [plaintiff]'s account in default, is a classic example of an 'informal workout arrangement' not within the coverage of the Act ." *Id.* 616 F.2d at 335 n. 3.

Accordingly, defendant Hospital's motion to dismiss plaintiff's FCBA claim is granted.

### B. State Law Claims

In addition to bringing this action under the FCBA, plaintiff also makes numerous state law claims: (1) under New York General Business Law § 701, *et seq.;* (2) under New York General Business Law § 349; (3) for breach of contract; (4) for negligence; and (5) for negligent infliction of emotional distress. These state law claims against defendant Hospital are based on the same facts and circumstances as plaintiff's FCBA claim.

██ The Supreme Court instructs that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citing United *Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Accordingly, this court declines to exercise supplemental jurisdiction over plaintiff's state law claims against defendant Hospital pursuant to 28 U.S.C. § 1367(c)(3), and these claims are dismissed without prejudice.

## II. Defendants RCC and CBA

### A. *Federal Claim*

#### i. Fair Debt Collection Practices Act

Defendant RCC argues that plaintiff's fifth cause of action should be dismissed because plaintiff failed to specify which section of the Fair Debt Collection Practices Act ("FDCPA") was violated. RCC also argues that the plaintiff never disputed his debt with defendant Hospital in writing and that he did not allege in his amended complaint that he

notified RCC in writing, as is required by 15 U.S.C. § 1692g. Defendant RCC submits an affidavit from Michelle Hall, a collector at The Credit Bureau (Item 10, Exh. A). Ms. Hall states that "[a]t no time did plaintiff ever dispute the debt which The Credit Bureau was attempting to collect from him, and in fact, plaintiff acknowledged that he owed the debt." (*Id.*, ¶ 5).

Defendant CBA argues that plaintiff has failed to allege a violation of the FDCPA because plaintiff failed to allege that plaintiff disputed the debt in writing or that defendant knew that plaintiff disputed defendant Hospital's billing tactics. Defendant CBA submits an affidavit from Susan Gold, Bureau Manager of Albany Credit Bureau, Inc., d/b/a CBA (Item 19, Exh. A). Ms. Gold states that plaintiff only contacted defendant CBA once, via telephone, and that he never indicated that his debt was disputed, but rather simply provided his billing information (*Id.*, ¶ 7).

Defendant CBA further argues that plaintiff's FDCPA claim is barred by the statute of limitations. Defendant CBA argues that CBA sent correspondence to plaintiff on November 3, 1995, and that plaintiff did not file this action until May 16, 1997, not within the one-year statute of limitations. Defendant CBA argues that while it did send correspondence to plaintiff on July 16, 1996, the complained-of violations took place more than one year prior to the filing of plaintiff's complaint.

In response, plaintiff argues in his memorandum of law that while plaintiff must dispute the debt in writing under the FDCPA, a precursor to this requirement is that the defendant collection agency must first send out a proper validation notice. Plaintiff argues that since defendants cannot demonstrate beyond a doubt that there is no set of facts upon which plaintiff can prevail, its motion to dismiss must be denied.

In ruling on defendants' motion to dismiss, the court notes that

> Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material.

*Fonte v. Bd. of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir.1988).

Here, both parties have submitted matters outside the pleadings on this motion. Defendants RCC and CBA have each submitted an affidavit from an employee of their respective credit agencies (Item 10, Exh. A; Item 19, Exh. A). Plaintiff has submitted his sworn affidavit (Item 22), but this affidavit does not shed any new light on plaintiff's amended complaint, nor does it contradict defendants' affidavits. Rather, plaintiff's affidavit seemingly was submitted in response to defendant RCC's contention in its reply memorandum of law (Item 16) that plaintiff did not comply with Local Rule 7.1 because he did not submit an affidavit. Based on the foregoing, the court refuses to convert the present motion to dismiss into one for summary judgment "[b]ecause summary judgment is a drastic device, it should not be granted where parties have yet to exercise their opportunity for pre-trial discovery." *Petrosky v. New York State Dept. of Motor Vehicles*, 971 F.Supp. 75, 77 (N.D.N.Y.1997) (citing *National Life Ins. v. Solomon*, 529 F.2d 59 (2d Cir.1975)). As in *Petrosky*, there has been no discovery in the case at hand.

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The sixteen subsections of section 1692e provide a nonexhaustive list of practices that fall within the statute's ban." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993). A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993), and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA, *see* 15 U.S.C. § 1692k.

Here, plaintiff claims that defendants RCC and CBA knew that plaintiff disputed defendant Hospital's "wrongful collection ef-

fort" (Item 5, ¶ 24) and that defendants RCC and CBA caused derogatory information to be placed on his credit report (*Id.*, ¶¶ 23, 25). He also claims that defendants failed to ascertain the validity of the debt and failed to remove it from the credit report (*Id.*, ¶ 45).

While defendants RCC and CBA argue that plaintiff did not dispute the debt in writing, it is not clear at this stage of the litigation whether defendants sent out proper validation notices. Further, it is not clear whether the statute of limitations bars this action because the dates of all correspondence from defendants RCC and CBA to plaintiff are not known.

Accepting as true the allegations in the complaint, as this court must when ruling on a motion to dismiss, plaintiff has stated a claim against defendants RCC and CBA under the FDCPA. His allegation that defendants RCC and CBA knew that plaintiff disputed defendant Hospital's "wrongful collection effort" (Item 5, ¶ 24) states a claim sufficient to survive a motion to dismiss under 15 U.S.C. § 1692e(2)(A) which provides that "[t]he false representation of the character, amount, or legal status of any debt" violates the FDCPA. Plaintiff's allegation that defendants RCC and CBA caused derogatory information to be placed on his credit report (*Id.*, ¶¶ 23, 25) states a claim sufficient to survive a motion to dismiss under 15 U.S.C. § 1692e(8) which provides that "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false" violates the FDCPA. Plaintiff's allegations also state a claim sufficient to survive a motion to dismiss under 15 U.S.C. § 1692f(1) which provides that "[t]he collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law" violates the FDCPA.

Finally, although defendants argue that plaintiff did not allege in his complaint that he disputed the debt in writing, defendants do not cite any case law in support of this argument. Given that the Federal Rules of Civil Procedure only require "notice pleading," plaintiff's allegations in his complaint

are sufficient to state a cause of action under the FDCPA.

Accordingly, defendants' motion to dismiss with respect to the FDCPA claim is denied.

## B.  *State Law Claims*

### i.  New York General Business Law, Article 29–H

In *Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 598 N.Y.S.2d 761, 762, 615 N.E.2d 218 (1993), the New York Court of Appeals held:

> Insofar as plaintiffs rely upon article 29–H of the General Business Law, which regulates debt collection practices, their claim fails because the article does not create a private cause of action, but authorizes only the Attorney–General or a District Attorney to commence an action for violation of its provisions.

Accordingly, defendants' motion to dismiss plaintiff's fifth cause of action under New York General Business Law, Article 29–H, is granted.

### ii.  Negligence

Defendants RCC and CBA argue that plaintiff's sixth cause of action for negligence should be dismissed because plaintiff did not allege that there was a special relationship between the parties, nor that RCC or CBA owed plaintiff a duty, nor that RCC or CBA breached that duty.

Plaintiff argues that defendants RCC and CBA are liable for negligence because they did not perform with due care their debt collection contract with defendant Hospital. Further, plaintiff argues that defendants RCC and CBA violated the FDCPA and that their violation of this statute is negligence *per se.*

While "[t]he FDCPA is not simply federal codification of common-law negligence," *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994), plaintiff has alleged sufficient facts to defeat a motion to dismiss. This count must await discovery before ruling on plaintiff's state law negligence cause of action.

## CONCLUSION

For the foregoing reasons, defendant Hospital's motion to dismiss (Item 6) plaintiff's FCBA claim is granted, and plaintiff's state law claims against defendant Hospital are dismissed without prejudice. Defendants RCC's and CBA's motions to dismiss (Items 10 and 19) plaintiff's FDCPA and negligence claims are denied, but defendants RCC's and CBA's motions to dismiss plaintiff's N.Y. GBL § 600, *et seq.*, claim are granted.

A telephone conference to set a further schedule shall be held on Tuesday, September 8, 1998, at 10:30 a.m.

So ordered.