**Ted ARGENTIERI, Plaintiff,**

v.

**FISHER LANDSCAPES, INC., and Boudreau & Nicosia, P.C., and Peter J. Nicosia, Defendants.**

**No. Civ. 98–10229–NG.**

United States District Court, D. Massachusetts.

June 9, 1998.

Daniel W. Goldstone, Goldstone & Sudalter, Boston, MA, for Ted Argentieri, plaintiff.

Richard Gary Garmil, North Andover, MA, for Fisher Landscapes, Inc., defendant.

Peter J. Nicosia, Law Offices of Robert T. Boudreau, Tyngsboro, MA, for Boudreau & Nicosia PC, defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

This case, under federal debt collection laws and pendent state claims brought against an attorney who appended a request for attorney's fees to his $6,000 state court contract claim, is one in which zealous advocacy has run amok. The case is fundamentally frivolous. Even if there was a modicum of substance to it, plaintiff's lawyer should have exercised some professional judgment and restraint: this case should have never been brought.

Defendants Peter J. Nicosia, Esq. (Nicosia) and his law firm, Boudreau & Nicosia, P.C. (Boudreau & Nicosia), have moved for summary judgment on the plaintiff's federal claims, and entry of separate and final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. They also move for sanctions against plaintiff's attorney Daniel W. Goldstone (Goldstone) pursuant to Rule 11 of the Federal Rules, as well as sanctions against plaintiff Ted Argentieri (Argentieri) pursuant to 15 U.S.C. § 1692k(a)(3). Argentieri moves for sanctions against Nicosia and his partner, Robert T. Boudreau (Boudreau), under 56(g) of the Federal Rules, or in the alternative, under Rule 11.

For the reasons set forth below, the defendants' motions for summary judgment and entry of separate and final judgment are **GRANTED;** the defendants' motion for sanctions against Goldstone is **GRANTED;** and the motion for sanctions against Argentieri is **DENIED.** Plaintiff's motion for sanctions against Nicosia and Boudreau is **DENIED.** Because summary judgment on the plaintiff's federal claim has been granted, plaintiff's pendent state claims are dismissed for lack of supplemental jurisdiction. 28 U.S.C. § 1367.

## I. FACTS

This federal action has its genesis in a rather prosaic dispute. Plaintiff Argentieri and defendant Fisher Landscapes, Inc. (Fisher) entered into a contract whereby Argentieri would pay Fisher $11,116.05 to build

walkways, a retaining wall and a patio at Argentieri's Needham, Massachusetts, home. Construction commenced, and according to Fisher, the parties made oral modifications to the written agreement. The project cost more than originally anticipated, and Argentieri was dissatisfied with the results.[1] Fisher, in contrast, asserted that the work was completed properly and that it was owed a further $6,590 by Argentieri. The parties were unable to resolve their differences, and Fisher won the race to the courthouse door.

Fisher, through its attorneys Boudreau & Nicosia, filed a two count complaint, in contract and *quantum meruit*, in Dedham District Court against Argentieri. Nicosia represented Fisher in the action under a standard contingency fee agreement. The complaint alleged approximately $6,590 in damages, and contained an ad damnum request for interest, costs and attorney's fees.[2] Attached to the complaint was the trial court's standard "statement of damages" form, filled out, which included an entry for $2,196.75 in attorney's fees in addition to the actual damages. Once the action was commenced, Fisher advanced motions for real estate and trustee process attachment, which were denied.

At some point soon after the suit was filed, Argentieri's counsel threatened to sue Nicosia and his firm in federal court on the basis of the prayer for attorney's fees in the District Court complaint. On January 30, 1998, Nicosia filed an amended complaint that excised the allegedly offending request for attorney's fees.

Undeterred, on February 6, 1998, Argentieri filed this suit, alleging that the request for attorney's fees in the original complaint violated the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692n. The suit named Fisher, Nicosia, and Boudreau & Nicosia as defendants. In addition to the federal debt collection claim, Argentieri's eleven count complaint also sought state law relief under various legal theories against Fisher in the matter of the landscaping contract. Shortly thereafter, Argentieri amended the complaint to focus exclusively on the defendants' alleged violations of state and federal debt collection law, all of which emanated from the excised clause requesting attorney's fees in Fisher's original complaint.

As a result of Argentieri's inclusion of Fisher's counsel in the federal action, Nicosia and his firm were forced to withdraw from their representation of Fisher in the District Court. Fisher located successor counsel, albeit on an hourly fee, rather than a contingency fee, basis.

## II. *DISCUSSION*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating the record, the court views the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995).

The moving party must make an initial showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If it does so, then the burden shifts to the non-moving party to set forth specific material facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a party resists summary judgment by pointing to a factual dispute on which it bears the burden

---

1. Argentieri obtained an appraisal from another contractor that stated that $8,000 in work would be required to repair and reconstruct the retaining wall alone.

2. "Wherefore, Plaintiff claims damage and demands Judgment against the Defendant as follows:
 a. actual damages;
 b. interest upon actual damages;
 c. reasonable attorney's fees;
 d. litigation costs; and
 e. for such further relief as the court deems fair and equitable."
 Plaintiff's Verified Complaint and Jury Demand, *Fisher Landscapes, Inc. v. Argentieri*, 98–54–cv–0033, Jan. 12, 1998.

at trial, that party must point to evidence affirmatively tending to prove the fact in its favor. *F.D.I.C. v. Elder Care Services, Inc.,* 82 F.3d 524, 526–27 (1st Cir.1996).

Argentieri's claim can be summarized as follows. 15 U.S.C. § 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt." This includes the collection of any fee, charge or expense incidental to the principal obligation unless it is authorized by law or the agreement creating the debt. 15 U.S.C. § 1692f(1). Since there was no statutory basis for the award of legal fees in the underlying contract and *quantum meruit* action, and attorney's fees are not provided for in the parties' agreement, Argentieri asserts that the request for attorney's fees in the first complaint violated the Act. Moreover, Argentieri argues, the fact that the provision was excised in the amended complaint before the instant suit was filed is immaterial: the original request violated the Act, and a party cannot "cure" a violation through an amended complaint.

### A. *Definition of "Debt Collector" under the Act*

■ The Act defines a "debt collector" as a person in any business "the *principal purpose* of which is the collection of any debts, or who *regularly* collects or attempts to collect, directly or indirectly, debts...." 15 U.S.C. § 1692a(6) (emphasis added). "The requirement that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business." S.Rep. No. 95–382 (1977), 1977 U.S.Code Cong. & Admin. News 1695.

Congress amended the FDCPA in 1986 to remove an exemption for lawyers under this definition. According to the House Report, the lawyer exemption resulted in a substantial increase in the number of attorneys who used the exemption to evade compliance with the Act. *See* H.R.Rep. 99–405 (1985), 1986 U.S.Code Cong. & Admin. News 1752. According to the report, the vast majority of attorney debt collection activities did not involve litigation or other formal legal action, but rather the traditional debt collection mechanisms that the Act was designed to regulate: harassing phone calls, threatening letters, communication with third parties and so on. Many of these attorneys advertised in the "collection agency" headings of the telephone directory, touting their exclusion from the FDCPA. Consequently, Congress felt it necessary to close this loophole. In *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 1493, 131 L.Ed.2d 395 (1995), the United States Supreme Court held that the FDCPA does indeed apply to lawyers who regularly, through litigation, try to collect consumer debt.

However, Congress knew that the Act still would only apply to attorneys who *regularly or substantially* engaged in debt collection activity. *See Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1513 (9th Cir.1994) ("Congress was almost certainly aware that the general definition of 'debt collector,' requiring that debt collection be either a 'principal purpose' or a regular part of the collector's business, would protect a substantial percentage of attorneys in ordinary legal practice ...").

Courts have invoked this definitional threshold to weed out FDCPA claims against attorneys who do not regularly or principally engage in debt collection. *Compare Fox,* 15 F.3d at 1513 n. 5 (attorney liable under the Act where between 80% and 100% of his practice was debt collection); *Scott v. Jones,* 964 F.2d 314, 316 (4th Cir.1992) (attorney is a debt collector where at least 70% of his legal fees were generated from the collection of debts); *Ditty v. CheckRite, Ltd., Inc.,* 973 F.Supp. 1320, 1336 (D.Utah 1997) (attorney liable under act where debt collection represented one third to one half of firm's activities); *Blakemore v. Pekay,* 895 F.Supp. 972, 977 n. 2 (N.D.Ill.1995) (defendant attorney was debt collector where plaintiff showed that he had filed over 1,200 collection actions in the last year and had been elected to Illinois Creditors Bar Association); *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 322 (E.D.Mich.1992) (court focused on defendant's debt collection relationship with a large corporate client to find it was debt collector despite the fact that debt collection represented only 4% of firm's activity), *with*

*Nance v. Petty, Livingston, Dawson & Devening,* 881 F.Supp. 223, 225 (W.D.Va.1994) (attorneys not debt collectors where 0.61% of partner's practice and 1.07% of firms cases involved debt collection); *Mertes v. Devitt,* 734 F.Supp. 872, 873–874 (W.D.Wis.1990) (attorney not debt collector where he averaged two debt collection matters per year, and debt collection comprised less than one percent of his practice).

Nicosia contends that summary judgment is warranted because he and his firm are not "debt collectors" within the meaning of the federal FDCPA. He asserts in his affidavit that, at the very most, 0.4% of his firm's practice could be characterized as the collection of consumer debt, and therefore the Act is inapplicable. Argentieri, on the other hand, contends that whether or not Nicosia and his firm are debt collectors is a disputed material issue of fact that precludes summary judgment.[3] Argentieri notes that there is no documentation provided to verify the 0.4% figure, nor is it clear how it was calculated.

Despite the early stage of the proceedings, I find that Nicosia's affidavit is dispositive. Argentieri has an insurmountable burden in showing that Nicosia meets the definition of a debt collector. Even if the precise contours of Nicosia's 0.4% calculation are ill-defined, Argentieri cannot evade summary judgment without presenting any reason to question it. *See F.D.I.C. v. Elder Care Services, Inc.,* 82 F.3d 524, 526–27 (1st Cir.1996) (if a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial, that party must point to evidence affirmatively tending to prove the fact in its favor); *Nance,* 881 F.Supp. at 225 (where attorney avers that debt collection only represents a small frac-

tion of his law firm's practice, summary judgment was warranted because plaintiff presented no "contrary evidence"). Argentieri has given this Court no reason to question Nicosia's 0.4% figure, such as an advertisement or yellow pages listing touting Nicosia's facility with debt collection; a specialty listing in an attorney guide such as Martindale–Hubbell; membership in a creditor or debt collection attorney organization; or any other suggestion of any kind that the 0.4% is deceptive or incorrect.

■ Plaintiff argues that at the very minimum he has shown enough to trigger the provisions of 56(f).[4] I disagree. "Federal Rule 56(f) offers a procedural escape hatch for a party who genuinely requires additional time to marshal facts essential to justify its opposition when confronted by a summary judgment motion." *Mattoon v. City of Pittsfield,* 980 F.2d 1, 7 (1st Cir.1992) (citations omitted). Under Rule 56(f), "[t]he movant must . . . articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue. . . ." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991).

Goldstone's affidavit is a vague statement that does not meet the standards of this rule, as he has not presented any basis for believing that Nicosia's figures are sharply inaccurate.[5] The situation might be different if Argentieri could show that a minor shift in the calculation would lead to a different result. However, it is difficult to imagine a different way to recalculate the 0.4% figure that would result in a determination that Nicosia "regularly or principally" engages in debt collection. The numbers are so drastically disparate that continuing would be pointless.

3. No discovery has taken place to this point in the federal case.

4. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

5. Goldstone's statement that Nicosia "never alluded to the fact that he and his firm were *not* debt collectors" is quite unpersuasive. Moreover, Goldstone's allegation that Nicosia informed him that Nicosia did a substantial amount of collections and was well-versed in debt collection law is insufficient to create a factual dispute given the tiny fraction of debt collection business outlined in Nicosia's affidavit.

In order to prove that Nicosia is a debt collector under the Act, Argentieri would require unfettered access to Nicosia's (and his law firm's) files, billing records, and client information. Absent a more compelling argument that Nicosia's 0.4% calculation could be recast to show that debt collection is a regular or principal part of his business, I will not open that door.

I also resist allowing discovery out of a serious concern that this Act can be used as a bad-faith strategic mechanism to drive a wedge between litigants and their counsel. When a lawyer is sued for a violation of the FDCPA in connection with a legal proceeding, the lawyer is forced to find new counsel for his or her client due to the potential conflict; precisely what happened here. Thus, a debtor can seriously disrupt a relatively simple claim merely by making an FDCPA claim against an attorney, a claim that may or may not have any foundation. I will not allow the FDCPA to become an arrow in the quiver of bad faith strategic maneuvers that can be used to railroad lawyers or their clients. Unless there is some concrete basis to believe that an attorney falls within the definition of a "debt collector," evidence that is wholly absent in this case, I will not permit a clearly meritless suit to proceed into disruptive and intrusive discovery.

In sum, Nicosia has presented an affidavit that quite clearly demonstrates that he is not a "debt collector" under the Act. Argentieri cannot point to any fact that meaningfully suggests that Nicosia's assertion is misleading, false or inaccurate. Summary judgment for Nicosia and his firm is consequently warranted.

## B. *Applicability of the Act to Court Pleadings*

■ Argentieri's claim—that Nicosia violated the FDCPA simply by including a generic prayer to the court for an award of attorney's fees in this simple contract dispute—strains credulity. Even if Nicosia and his firm can be considered "debt collectors" within the meaning of the Act, I cannot believe that Congress intended to have law-yers like Nicosia hauled into court under the circumstances at bar—a statement in a court pleading, now withdrawn.

■ Congress passed the FDCPA in order to address the "suffering and anguish" that were inflicted on consumers by debt collectors employing unconscionable practices. S.Rep. 95–382. "The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices. . . . In the most general terms, the FDCPA prohibits a debt collector from using certain enumerated collection methods in its effort to collect a 'debt' from a consumer." *Bass v. Stolper, Koritzinsky, Brewster, & Neider, S.C.,* 111 F.3d 1322, 1324 (7th Cir. 1997). The Senate Report, indicating the need for the legislation, described these practices:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

S.Rep. 95–382. To put an end to such practices, the Act prohibited "unfair or unconscionable means" to attempt to collect on a debt. Not surprisingly, neither the statute nor the legislative history explicitly state whether or not a statement made in a pleading to a court can constitute an unfair or unconscionable means.

■ However, it is abundantly clear to me that a request for attorney's fees under the circumstances of this case does not violate the FDCPA. A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party—the court—for consideration, not a demand to the debtor himself. A request for attorney's fees ultimately rests upon the discretion of the court and a determination of applicability at a later stage of the litigation.[6] The whole purpose of regu-

6. Argentieri's counsel suggested during oral ar- gument that the claimed violation of the Act

lating debt collection was to "supervise" a range of unsupervised contacts, such as demand letters and late-night telephone calls. In contrast, a statement in a pleading is supervised by the court and monitored by counsel. The two situations are drastically different.

The courts have their own system of protections against abusive tactics that occur during litigation. A grossly exaggerated debt or unfounded claim in a pleading could represent an abuse of process, and subject the attorney or client to sanctions or other disciplinary mechanisms.[7] Given these protections, when a claim is made to the court, there is no need to invoke the protections of a statute designed to protect consumers from unscrupulous, unsupervised debt collection tactics such as threats of violence and harassing telephone calls.

Finally, it cannot be ignored that Nicosia submitted an amended complaint to the District Court that withdrew the disputed attorney's fee provision before Argentieri even filed this complaint. In other words, the entire issue was moot before the complaint was filed.

Under the circumstances, it is exceedingly difficult for me to imagine that a prayer for attorney's fees in a court document could represent a violation of the FDCPA. To the extent that one court seems to have found otherwise, I disagree. *Strange v. Wexler,* 796 F.Supp. 1117, 1118 (N.D.Ill.1992).[8] However, if a pleading could in some circumstances violate the Act, I find that this excised pleading, under these circumstances, did not.

I believe that the filing of this suit bespeaks a genuine lapse of judgment on the part of Argentieri's counsel. Even if Nico-

sia's prayer for relief did represent some narrow, technical violation of the Act—which I doubt—his decision to avail himself of the remedies afforded by it is misguided. The genesis of the instant litigation is a residential landscaping agreement, and the dispute one of a few thousand dollars. Did Argentieri's counsel serve his client's best interests by filing this action, thereby substantially increasing the costs, complexity and personal antagonism involved? I seriously doubt it.

## III. *RULE 11 SANCTIONS*

As I explained during the hearing on these motions, I am always reluctant to invoke the drastic remedy of sanctions against a zealous lawyer, particularly a younger one. If errors are to be made, they should be made on the side of overzealousness rather than timidity. But even under the most generous standards, attorney Goldstone has crossed the line. As far as I can tell, his filing of this action served only two purposes, both of them highly inappropriate: to increase the cost and complexity of the litigation for Fisher, and to force Nicosia and his firm out of the District Court case in a high-stakes game of "gotcha." There seems to be a level of personal antagonism between counsel that contributed to the deterioration of this simple case, an antagonism that has not well served either of their clients.[9]

Rule 11, as amended in 1993, provides in part:

(b) *Representations to the Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, informa-

would have been averted if Nicosia simply placed a parenthetical—("if applicable")—after the request for attorney's fees. Such a designation is obviously presumed.

7. Even though there was no legal or contractual basis for Nicosia's request for attorney's fees, there certainly was nothing absurd or exaggerated about it.

8. I also note that the plaintiff in *Strange* brought his FDCPA claim under a different section of the

statute, 15 U.S.C. § 1692e, than Argentieri. *Id.* at 1118.

9. I express no views on the merits of either side's position in the underlying contract dispute, nor, for that matter, on whether or not attorney Nicosia's hands are entirely clean themselves. If, for example, Nicosia brought a motion for attachment of Argentieri's real estate solely to give Argentieri's wife "apoplexy," as Goldstone has charged, this can be raised with the District Court.

tion, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

 The objective of Rule 11 is to deter dilatory and abusive tactics in litigation, and to streamline the litigation process by lessening frivolous claims or defenses. *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir.1990). Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an 'improper purpose.' " *Salois v. Dime Savings Bank of New York*, 128 F.3d 20, 28 (1st Cir.1997), *citing S. Bravo Systems v. Containment Technologies Corp.*, 96 F.3d 1372, 1374–75 (Fed.Cir.1996). A party who brings an action to intimidate or coerce another party to take some action is subject to sanctions for bringing an action for an "improper purpose." *Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir.1994); *EEOC v. Tandem Computers, Inc.*, 158 F.R.D. 224 (D.Mass. 1994) (sanctioning party that filed motion for the purpose of harassment and increasing the costs of litigation). Moreover, sanctions are warranted where a party files a claim or submits a motion that is legally groundless. *Plante v. Fleet Nat'l Bank*, 978 F.Supp. 59, 66 (D.R.I.1997). "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." *Sanko Steamship Co., Ltd. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987).

 I find that under the circumstances of this case, Goldstone filed both a legally groundless complaint, and did so for improper purposes. Even if there was a grain of legal merit in the complaint, in the context of this relatively minor and simple dispute, Goldstone clearly sought to raise the stakes improperly. Moreover, he seems to have been motivated by a personal antagonism for opposing counsel rather than the best interests of his client. Sanctions are consequently warranted.

Nicosia has submitted an affidavit documenting the amount of money in legal time and costs associated with defending this suit and preparing the motion for summary judgment that he incurred. Considering that as a result of this action, Boudreau & Nicosia also lost a client, I find that sanctioning Goldstone in the amount of $2,000 (just less than half the amount requested) is appropriate, and is "sufficient to deter repetition of such conduct … by others similarly situated." Fed.R.Civ.P. 11(b)(2).[10] Goldstone's motion for sanctions against Boudreau Nicosia is denied.

## IV. *SANCTIONS UNDER 15 U.S.C. § 1692k(a)(3)*

 Defendants Nicosia and Boudreau & Nicosia also move for sanctions against the plaintiff under 15 U.S.C. § 1692k(a)(3), which permits a court to award to a defendant attorney's fees and costs where an action under the FDCPA was brought in bad faith or for the purpose of harassment. Given that I have sanctioned plaintiff's counsel under Rule 11, and that defendant's fees and costs will be reimbursed, there is no need to invoke this remedy. Defendants' motion is therefore denied.

**SO ORDERED.**

---

**10.** Goldstone should submit the $2,000 directly to Boudreau & Nicosia.