**Ted ARGENTIERI, Plaintiff,**

v.

**FISHER LANDSCAPES, INC., Boudreau & Nicosia, P.C., and Peter J. Nicosia, Defendants.**

No. Civ.A. 98–10229–NG.

United States District Court,
D. Massachusetts.

Nov. 2, 1998.

Daniel W. Goldstone, Goldstone & Sudalter, Boston, MA, for Ted Argentieri, plaintiff.

Richard Gary Garmil, North Andover, MA, for Fisher Landscapes, Inc., defendant.

Peter J. Nicosia, Law Offices of Robert T. Boudreau, Tyngsboro, MA, for Boudreau & Nicosia PC, defendant.

### AMENDED MEMORANDUM AND ORDER
**November 2, 1998**

GERTNER, District Judge.

Pursuant to Rule 60 of the Federal Rules of Civil Procedure, plaintiff Ted Argentieri ("Argentieri") moves to vacate the Court's June 9, 1998, Order ("Order") entering summary judgment for Defendants Peter J. Nicosia, Esq. ("Nicosia") and his law firm, Boudreau & Nicosia, P.C. ("Boudreau & Nicosia"), and sanctioning Argentieri's attorney Daniel W. Goldstone ("Goldstone") pursuant to Rule 11 of the Federal Rules. Nicosia and his firm assent to Argentieri's motion. Argentieri argues that the Order is inconsistent with controlling law, and that he had a good faith basis for filing his complaint. While I will take this opportunity to clarify two aspects of the reasoning underlying the Order, the motion to vacate is **DENIED.**

### I. BACKGROUND

This case began as a contract dispute. Argentieri and defendant Fisher Landscapes ("Fisher") entered into a contract whereby Argentieri would pay Fisher $11,116.05 to build walkways, a retaining wall and a patio at Argentieri's home. When a dispute arose over the contract, Fisher brought suit in District Court in Dedham, Massachusetts. Nicosia, Fisher's lawyer, included a request for attorney's fees in the complaint. Soon thereafter Argentieri threatened to sue Fisher and Nicosia in federal court on the grounds that the request for attorney's fees violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692n. Within a week, Fisher filed an amended complaint that excised the allegedly offending request for attorney's fees. But that did not satisfy Argentieri, who brought suit in this court, causing Fisher to have to retain new counsel for the original contract dispute.

I dismissed the case on summary judgment on two grounds. First, I found that because only 0.4% of Nicosia's firm's practice could be characterized as debt collection, he was not a "debt collector" under the FDCPA. *Argentieri v. Fisher Landscapes, Inc.*, 15 F.Supp.2d 55, 60, 1998 WL 400104, *3 (D.Mass.). Second, I found that Nicosia's routine request for attorney's fees in a complaint presented to a court and withdrawn long before Argentieri's complaint under the FDCPA was filed was not a violation of the FDCPA. *Id.*, at 61–62, 1998 WL 400104 at *6.

I sanctioned Goldstone for bringing suit for improper purposes. From the evidence presented to me, I could see only two possible goals he could have had, "both of them highly inappropriate: to increase the cost and complexity of the litigation for Fisher, and to force Nicosia and his firm out of the District Court case in a high-stakes game of 'gotcha.'" *Id.*, at 62, 1998 WL 400104 at *7. Even if there were a grain of legal merit to his suit, in the context of a relatively minor and simple dispute, it was improper and reflected personal antagonism rather than the best interest of his client. *Id.*

On September 3, 1998, 86 days after entry of judgment against Argentieri, he, joined by Nicosia, filed his motion to vacate the Order.

## II. *ARGUMENT*

By way of prologue, I want to point out that the motion to vacate is late. Rule 60 says that motions seeking relief from a judgment "shall be made within a reasonable time." Given the time limits under the rules, an 86 day delay pushes the bounds of reasonable time. By way of analogy, the normal time for an appeal is 30 days (Rule 4(a) of the Federal Rules of Appellate Procedure). Furthermore, that appeal is ineffective until disposition of a Rule 60 motion *only if* the Rule 60 motion is made within 10 days of the entry of judgment (Fed.R.App.Pro. 4(a)(4)(F)).

Nevertheless, I take this opportunity to reconsider my Order. To the extent the papers raise issues that require clarification, I will clarify them at this time. Nothing before me, however, affects the ultimate outcome; the Order will not be vacated.

The first substantive issue to clarify is the relevance of the 0.4% figure describing the percentage of activity of Nicosia's firm that can be described as collection of consumer debt. Argentieri points to three cases to establish the proposition that it is not the percentage of debt collection activity that matters, but the total volume, such that engaging in debt collection more than a handful of times per year on a regular basis is sufficient to be covered by the FDCPA: *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir.1997) ("if the volume of a person's debt collection activity is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity"); *Crossley v. Lieberman*, 868 F.2d 566, 569 (3d Cir.1989) ("any attorney who engages in collection activities more than a handful of times per year must comply with the FDCPA.") (citing R. Hobbes, *Attorneys Must Now Comply With Fair Debt Collection Law*, X Pa.J.L.Rptr., No. 46, 3 (Nov. 21, 1987)); and *Stojanovski v. Strobl and Manoogian*, 783 F.Supp. 319, 322 (E.D.Mich.1992) ("Debt collection services may be rendered 'regularly' by defendant even though these services may amount to a small fraction of the firm's total activity").

I must put these cases in context. Nicosia's firm is a two person firm. A small percentage of a small firm's work will yield a small volume of debt collection activity. It is inconceivable that 0.4% of this small firm's work comes anywhere near the total volume of 639 demand letters that made the defendant in *Garrett*, 110 F.3d at 317, liable as a debt collector. Nor could it come close to the 175 collection suits filed by the defendant in *Crossley*, 868 F.2d at 569 n. 2, or to the defendant's volume of debt collection, given its ongoing service to Chrysler, in *Stojanovski*, 783 F.Supp. at 322.

The second substantive point concerns the scope of my assertion in the Order: "when a claim is made to the court, there is no need to invoke the protections of a statute [the FDCPA] designed to protect consumers from unscrupulous, unsupervised debt collection tactics such as threats of violence and harassing telephone calls." *Argentieri*, at 61, 1998 WL 400104 at *6. Taken out of context, this could seem to indicate that claims made to a

court simply are not covered by the FDCPA. I want to emphasize now that I intended no such reading. My point was meant to be taken in the context of the facts of this case, where the claim made to the court was a standard request for attorney's fees as an adjunct to an entirely appropriate contract cause of action, and where it was quickly withdrawn when the error was pointed out.

I stand by my statement that Nicosia's action simply does not fit into the abuses described in Congress when the FDCPA was amended in 1986 to remove the attorney exemption.

> These abuses, all prohibited by the Act, but inapplicable due to the attorney exemption, included late night telephone calls to consumers' calls to consumers' employers concerning the consumers' debts, frequent and repeated calls to consumers, disclosure of consumers' debt to third parties, threats of legal action on small debts where there is little likelihood that legal action will be taken, simulation of legal process, harassment, abuse, threats of seizure, and attachment and sale of property where there is little likelihood that such action will be taken.

H.Rep. No. 405, 99th Cong.2d Sess. (1985), cited in *Crossley*, 868 F.2d at 570. Nicosia's mistaken inclusion of a request for attorneys fees as part of a larger suit simply does not fit this picture of attorney abuse. I do not suggest here that claims filed in court could not, if intended to harass a debtor, be actionable under the FDCPA. But as I said in *Argentieri*, at 62, 1998 WL 400104 at *6, "this excised pleading, under these circumstances, did not."

### III. *CONCLUSION*

For the foregoing reasons, the Plaintiff's Assented To Motion For Relief From Judgment And To Vacate June 9, 1998, Memorandum And Order And, Thereafter To Dismiss Case [docket # 34] is **DENIED.**

**SO ORDERED.**