**FLEET NATIONAL BANK, Plaintiff,**

v.

**Jeffrey S. BAKER, Defendant.**

**No. 03–CV–10512–MEL.**

United States District Court,
D. Massachusetts.

May 7, 2003.

Arthur Goldberg, FTS a, Nathanson & Goldberg, Alvin S. Nathanson, Boston, MA, for Fleet Bank, Plaintiff.

Jeffrey Baker, Pro se, Baker & Associates, Boston, MA, for Jeffrey Baker, Defendant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Fleet National Bank moves to remand this case to the state court for lack of federal jurisdiction. Acting pro se, Jeffrey S. Baker, defendant and counter-claimant, who is also a lawyer, removed this case on the grounds that the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, applied to the facts underlying Fleet's complaint. Because no federal question exists, Fleet's motion to remand is GRANTED.

### I.

Fleet filed the instant complaint against Baker in Suffolk Superior Court, alleging breach of a Settlement Agreement (the Agreement) entered on or about November 24, 1993. The Agreement concerned Baker's default on a Promissory Note (the Note), which was executed and delivered to First National Bank of Boston [1] (FNB) on April 14, 1987. By executing the 1987 Note, Baker promised to pay FNB the

---

1. Fleet National Bank, the named plaintiff, is the successor in interest to First National Bank of Boston.

sum of $40,000, plus interest, costs and attorneys fees.

Due to Baker's default on the Note, on October 30, 1992, FNB filed a complaint against Baker. In his answer and counter-claim papers, Baker repeatedly referred to the loan as a "commercial transaction" and characterized his relationship to FNB as "engaged in trade and commerce." Baker also stated in his court papers filed in the 1992 action that FNB commenced the suit "seeking to collect a debt related to a real estate investment made by the Defendant in the late 1980's." On November 24, 1993, the parties entered the Agreement, by which Baker signed an Agreement for Judgment in favor of FNB, which provided that he would make the final payment on or before September 23, 1997. At that time Baker also signed a general release waiving "any and all rights which he may have had against FNB."

Baker has not complied with the terms of the Agreement, and consequently, Fleet instituted this suit against him for breach of the settlement agreement. Baker filed his answer and counter-claims against Fleet, alleging that Fleet had violated 15 U.S.C. § 1692 (the Federal Fair Debt Collection Practices Act) (FDCPA), and that the Note was entered into "for use of such proceeds primarily for personal and house-hold uses." [2]

## II.

Baker contends that federal jurisdiction exists in this case because Fleet and third-party defendants (attorneys for Fleet) are attempting to collect a debt in violation of the FDCPA. The claims that Fleet and the third-party defendants misrepresented the character and amount of the debt,

failed to disclose the required information related to the debt collection, and failed to advise him of other rights and liabilities triggered by the lending transaction. (Baker Ans. ¶¶ 57–71). He argues that federal courts have original jurisdiction over the claims brought pursuant to the FDCPA, and that therefore the case should not be remanded.

Thus, notwithstanding his previous judicial filings, Baker now claims that the Note was entered into "for use of such proceeds primarily for personal and household uses," and, at the hearing on this motion he attested that he used the loan monies to purchase real estate to be used for the purchase of a law office as well as for personal finances shortly after law school graduation.

Fleet moves to remand on several grounds. First, it points to Baker's numerous earlier characterizations of the Note as "commercial" and argues that these constitute judicial admissions and are conclusively binding. *U.S. v. Belculfine*, 527 F.2d 941, 944–945 (1st Cir.1975). Even if Baker's 1992 court statements do not qualify as judicial admissions, they are factors to be considered in evaluating whether Baker's unpaid note relates to consumer or commercial debt, argues Fleet.

As further evidence of its contention that the Note was issued for business rather than personal purposes, Fleet points to the Note itself, on which the "commercial" box is checked, and that the Agreement itself recited that the unpaid note, the subject of the Agreement, stemmed from a "commercial transaction." Moreover, Fleet cites a letter written by Baker in

---

**2.** Baker's Notice of Removal also cited 15 U.S.C. § 45(a)(1)(the Federal Trade Commission Act), and 39 U.S.C. § 3005 (the Anti-Mail Fraud Statute) as grounds for removal;

however, he has since withdrawn those counter-claims. Accordingly, Baker's claim of federal jurisdiction rests solely on the FDCPA.

reference to his loan application dated April 5, 1987 in which Baker wrote in pertinent part:

Kindly get back to me concerning my application for a line of credit. I am seeking $40,000 in order to close on the real estate deals I spoke to you about within a month.

(Fleet's Reply Memorandum). To this letter Baker attached his personal financial statement with a footnote referring to the real estate in New Hampshire he intended to purchase, "These properties are under contract and will be closed on within the next month. The loan requested herein shall go towards the purchase price." Fleet contends that this correspondence establishes that Baker obtained the loan to finance a business transaction, not for personal or household use.

Fleet argues next that even assuming arguendo that Baker executed the 1987 Note for personal reasons rather than business ones, this lawsuit alleges breach of a private contract, the Settlement Agreement, not the collection of a debt. *See e.g. First Gibraltar Bank, FSB v. Smith,* 62 F.3d 133, 135 (5th Cir.1995)(holding the FDCPA inapplicable to a plaintiff "attempting to enforce an obligation under a guaranty agreement in connection with a commercial transaction").

Fleet also maintains that Baker waived any and all claims against FNB (and the subsequent successor in interest to FNB, Fleet) and its original attorney in executing the Agreement.

Finally, Fleet argues that Baker's claim is time-barred. It stresses that any action brought under the FDCPA must be filed within one-year from the day of the alleged violation. *Freyermuth v. Credit Bureau Services,* 248 F.3d 767, 770 (8th Cir. 2001). Even assuming that the facts of this case fall within the scope of the

FDCPA, which Fleet disputes, Fleet contends that Baker is barred from bringing suit under the act.

In addition to the arguments above, the third-party defendants argue that they are not in the debt collection business as defined by the FDCPA. *See* 15 U.S.C. § 1692a(6)(defining debt collector as a person in any business "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts ...."). *See also Argentieri v. Fisher Landscapes,* 15 F.Supp.2d 55 (D.Mass.1998)(granting summary judgment in an FDCPA action against attorneys on the grounds that defendants were not "debt collectors" under the FDCPA).

### III.

The FDCPA does not apply to this case for two reasons. First, the debt in question is not a consumer debt, and second, Fleet's claim is for breach of the Settlement Agreement, not the collection of a Note. FDCPA's protections do not extend to such a claim. Accordingly, federal jurisdiction does not exist and the case is remanded to the state court.

The FDCPA protects consumers from abusive, deceptive and other unfair debt collection practices; it applies to consumer debts, not business loans. 15 U.S.C. § 1692; *see also Slenk v. Transworld Systems, Inc.,* 236 F.3d 1072, 1074 (9th Cir.2001). Whether a debt constitutes "consumer debt" of the sort covered by the FDCPA, depends on the character of the lending transaction with particular attention to the purpose for which the credit was extended. FDCPA § 1692a(5). The statute in pertinent part provides:

The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance,

or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692(a)(5). Therefore, the threshold issue is whether Baker's debt, which he has characterized in court filings as "a commercial transaction" related to "trade and commerce," is consumer debt as defined by the FDCPA. It is not.

The evidence of record establishes that at the time of the execution of the Note, during previous court actions, and on the face of the Note and Agreement the debt arose from commercial, not contrary, purposes. Fleet has made a significant showing that since the inception of their lending relationship with Baker, the 1987 Note has been characterized by both parties as a "commercial transaction," not one for personal or household use.

The additional fact that this case concerns the enforcement of a Settlement Agreement rather than a generic debt collection action compels the finding that the FDCPA does not apply to the facts of this case. The Agreement—the subject of the instant suit—did not entail giving proceeds to Baker to be used primarily for personal and household purposes.

### IV.

For the reasons stated above, federal jurisdiction does not exist in this case and accordingly, the motion to remand is GRANTED. The motion for attorneys fees and costs is DENIED however, as Baker's counter-claim alleging violations of the FDCPA was not capricious. All other pending motions in this case shall be disposed of in the state court.

It is so ordered.