Lucia CAMARA, Plaintiff,

v.

David M. FLEURY, Carmichael & Zajac, P.C. and Carmichael, Zajac, Fleury & Dasilva–Kilgore, P.C, Defendants.

No. CIV.02–10063–NG.

United States District Court, D. Massachusetts.

Sept. 30, 2003.

Amy E. Goganian, Melick, Porter & Shea, LLP, Boston, MA, for Carmichael & Zajac, P.C., Carmichael, Zajac, Fleury & Dasilva–Kilgore, P.C., David M. Fleury, Defendants.

Kathleen J. Hill, Law Office of Kathleen J. Hill, Boston, MA, for Lucia Camara, Plaintiff.

Angela L. Lackard, Melick, Porter & Shea, LLP, Boston, MA, for Carmichael & Zajac, P.C., Carmichael, Zajac, Fleury & Dasilva–Kilgore, P.C., David M. Fleury, Defendants.

### MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

GERTNER, District Judge.

The defendants in this case, David M. Fleury ("Fleury") and his law firm—Carmichael & Zajac, P.C. and Carmichael, Zajac, Fleury & Dasilva–Kilgore, P.C. ("the law firm"), move for partial summary judgment on the claims of Lucia Camara

("L.Camara"), who brought suit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Unfair Debt Collection Practices Act M.G.L. c. 93 § 49, and for Intentional and Negligent Infliction of Emotional Distress, for the alleged harassment she suffered as a result of Fleury's attempts to collect reimbursement for his client, Robert Camara ("R.Camara"), on a lien R. Camara had paid off, as well as attorney's fees for this service on behalf of R. Camara. The defendants seek judgment [document # 21] only with regards to the FDCPA claim—the only federal claim plaintiff brought. For the reasons set forth below, I **GRANT** defendants' motion for partial summary judgment and **DISMISS** the remaining state law claims.

## I. FACTS/PROCEDURAL HISTORY

Defendant Fleury is an attorney who represented plaintiff's ex-husband, R. Camara, in divorce proceedings against plaintiff, L. Camara. Fleury's co-defendant is the law firm Fleury worked for during the time of he represented R. Camara.[1]

In July of 2000, a separation agreement was entered into as part of the divorce. Section F(1), "Marital Property," of the agreement called for L. Camara to sign a quitclaim deed transferring the shared marital home to R. Camara. Section F also provided that R. Camara "shall be solely responsible for all mortgage, taxes, insurance, costs of payments associated with the real estate." Section H(1), "Liabilities and Debts," of the agreement, however, provided that "any remaining individual debts not listed on the attached schedule 'A' shall remain the sole responsibility of the party in whose name the debt is in" (exhibit C of motion for partial summary judgment/docket # 22). There was no mention in the attached schedule of money owed to a former business landlord for failure to make rental payments on a commercial leasehold. However, it is now clear that a lien was placed on the marital home on November 28, 1995 by former business landlord, Thomas Flatley, as a judgment against L. Camara for the sum of unpaid rent.

According to the defendants, R. Camara first discovered this financial obligation when he tried to refinance the former marital home in the spring of 2001, only to be told that he could not do so because there was a lien on the house for $5,050.00. The plaintiff contradicts this account, alleging that her ex-husband and/or his counsel knew about the debt before the refinancing attempt. According to L. Camara, R. Camara participated in the business venture and was attuned to the financial issues associated with it.

R. Camara paid the outstanding debt (which at that point amounted to $5,320,32) on May 14, 2001, so that he could refinance the property and then asked his divorce attorney, Fleury, to help him get reimbursement from L. Camara for the debt he had paid off. Fleury obliged by sending a letter to L. Camara's divorce lawyer on May 25, 2001, to see if she still represented L. Camara. Fleury also wrote in the letter that if no response was received within seven days, he would contact L. Camara directly.

After receiving no response from L. Camara's divorce attorney, Fleury wrote L. Camara a letter directly on July 23, 2001 regarding money she owed her ex-husband—child support as well as the lien that had been on the house. On July 27, 2001, a corrected letter was sent to L. Camara which only requested that she pay her ex-husband the money she allegedly

---

1. In August of 2001 through February of 2003, Carmichael & Zajac, P.C. did business under the name Carmichael, Zajac, Fleury & DaSilva–Kilgore, P.C.

owed him for the lien and $1,000 in Fleury's attorney's fees for his efforts to seek collection from her for this alleged debt. Both letters indicated that if L. Camara did not respond in writing within 7 days of receipt of the letter, Fleury would take legal action.

L. Camara then secured legal counsel. On August 17, 2001, plaintiff's counsel allegedly sent a letter to defendant requesting the validation of the debt and received no reply.[2] On December 12, 2001, Fleury sent a letter directly to plaintiff's counsel addressing the issue of the debt. On January 14, 2002[3], plaintiff's counsel sent defendant another letter requesting validation of the debt—again allegedly with no response.

Plaintiff alleges that Fleury and R. Camara then used the debt issue as a tool in the child custody proceeding and other post-divorce proceedings. L. Camara claims the debt is solely her ex-husband's responsibility because he assumed the debt under Section F of the separation agreement, and Fleury was harassing her to pay an invalid debt. R. Camara responds that the debt is solely his ex-wife's under Section H of the separation agreement, and she now owes that money to him since he paid it off for her so that he could refinance the former marital home.

Plaintiff brought this suit on July 18, 2002, claiming Fleury's conduct violated the Fair Debt Collection Practices Act 15 U.S.C. § 1692, Massachusetts' Unfair Debt Collection Practices Act M.G.L. c. 93 § 49, and suing both Fleury and his firm under those statutes as well as on state law claims of intentional and negligent infliction of emotional distress. On April 18, 2003, defendants filed a motion for partial summary judgment, asserting that the facts, as alleged by the plaintiff, fail to state a claim under the federal FDCPA.

## II. DISCUSSION

Under Federal Rule 56, summary judgment appropriately disposes of a claim when the pleadings, depositions, interrogatory responses, admissions and affidavits on file suggest that there is no genuine issue of material fact and the movant is entitled to judgment on the claim as a matter of law. Fed.R.Civ.P. 56(c). It is incumbent upon a court confronted with a summary judgment motion to view the facts in the light most favorable to the nonmovant, and all reasonable inferences from these facts are to be drawn in its favor. *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 42 (1st Cir.1999); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. The FDCPA Claim

### 1. Do Fleury and his Firm Satisfy the Definition of "Debt Collectors" under the FDCPA?

██ Fleury and the law firm argue that the facts alleged by L. Camara fail to raise a claim triable under the FDCPA for a number of reasons, the most clear and convincing being that none of the defendants are "debt collectors" as defined by the Act. *Cacace v. Lucas,* 775 F.Supp. 502, 504 (1990), citing 15 U.S.C. § 1692c-j.

The Act defines a "debt collector" as a person in any business "the *principal purpose* of which is the collection of any debts, or who *regularly* collects or attempts to collect, directly or indirectly, debts...."

---

**2.** This letter is not included as an exhibit, but defendants do not appear to dispute that such a letter was sent.

**3.** The letter is actually dated January 14, *2001,* but common sense indicates this must be an error and the accurate date must be 2002.

15 U.S.C. § 1692a(6) (emphasis added). To the extent that the words "regularly" and "principal purpose" are ambiguous, legislative history may be instructive. That history [Consumer Credit Protection Act, Senate Report from Committee on Banking, Housing and Urban Affairs] notes: "The requirement that debt collection be done 'regularly' would exclude a person who collects a debt for another in an isolated instance, but would include those who collect for others in the regular course of business." S.Rep. No. 95–382 (1977), 1977 U.S.Code Cong. & Admin. News 1695.

Congress amended the FDCPA in 1986 to remove an exemption for lawyers under this definition. The lawyer exemption resulted in a substantial increase in the number of attorneys using the exemption to evade compliance with the Act. *See* H.R.Rep. 99–405 (1985), 1986 U.S.Code Cong. & Admin. News 1752. Indeed, according to the House report [Fair Debt Collection Practices Act, Amendment House Report], the vast majority of attorney debt collection activities did not involve litigation or other formal legal action, but rather the traditional debt collection mechanisms that the Act was designed to regulate: harassing phone calls, threatening letters, communication with third parties and so on. Since many of these attorneys advertised in the "collection agency" headings of the telephone directory, touting their exclusion from the FDCPA. Consequently, Congress felt it necessary to close this loophole.[4]

But eliminating the attorney exemption did not change the underlying structure of the Act. It still would only apply to attorneys who *regularly* or *substantially* engaged in debt collection activity. *See Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1513 (9th Cir.1994) ("Congress was almost certainly aware that the general definition of 'debt collector,' requiring that debt collection be either a 'principal purpose' or a regular part of the collector's business, would protect a substantial percentage of attorneys in ordinary legal practice ...").

Courts have invoked this definitional threshold to weed out FDCPA claims against attorneys who do not regularly or principally engage in debt collection. *Compare Fox,* 15 F.3d at 1513 n. 5 (attorney liable under the FDCPA where at least 70% of his legal fees were generated from the collection of debts); *Ditty v. CheckRite, Ltd., Inc.,* 973 F.Supp. 1320, 1336 (D.Utah 1997) (attorney liable under act where debt collection represented one third to one half of firm's activities); *Blakemore v. Pekay,* 895 F.Supp. 972, 977 n. 2 (N.D.Ill.1995) (defendant attorney was debt collector where plaintiff showed that he had filed over 1,200 collection actions in the last year and had been elected to Illinois Creditors Bar Association); *Stojanovski v. Strobl & Manoogian, P.C.,* 783 F.Supp. 319, 322 (E.D.Mich.1992) (noting that the word "regular" is not synonymous with the word "substantial," the court focused on defendant's debt collection relationship with a large corporate client to find it was debt collector despite the fact that debt collection represented only 4% of firm's activity), with *Nance v. Petty, Livingston, Dawson & Devening,* 881 F.Supp. 223, 225 (W.D.Va.1994) (attorneys not debt collectors where 0.61% of partner's practice and 1.07% of firm's cases involved debt collection); *Mertes v. Devitt,* 734 F.Supp. 872, 873–874 (W.D.Wis.1990) (attorney not debt collector where he aver-

---

4. In *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the United States Supreme Court held that the FDCPA does indeed apply to lawyers who regularly, through litigation, try to collect consumer debt.

aged two debt collection matters per year, and debt collection comprised less than one percent of his practice).

Fleury and his law firm contend that summary judgment is warranted because they are not "debt collectors" within the meaning of the Act. Defendant John Zajac ["Zajac"] asserts in his affidavit [document # 25] that 4.57% of the firm's work (69 cases out of 1511) involves consumer debt collection activities, and the firm has never represented a commercial debt collector in connection with debt collection practices. Only 30 debt collection cases were active after January 1, 2000, according to the Zajac affidavit. Zajac states that the law firm's practice was concentrated in "areas of civil litigation, domestic relations and bankruptcy law (representing almost exclusively debtors). Civil litigation matters are generally in the area of business litigation, employment, or plaintiffs' personal injury" [document # 25]. Fleury states in his affidavit that he has not performed any services for the collection of debt against consumers and never represented a commercial debt collection agency in connection with collecting debts of any kind [document # 24].

L. Camara, on the other hand, contends that whether or not Fleury and his firm are debt collectors is a disputed material issue of fact that precludes summary judgment. Plaintiff contests the numbers given in defendants' affidavits and argues that they are underestimating the percentage of cases that come under the authority of the FDCPA.

Despite the fact that the parties are at an early stage of the proceedings and no discovery has taken place to this point on this issue, I find that Fleury and Zajac's affidavits are dispositive. Even if the ex-

actness of defendants' calculations is unclear, plaintiff cannot evade summary judgment without presenting any reason to question it. See *F.D.I.C. v. Elder Care Services, Inc.*, 82 F.3d 524, 526–27 (1st Cir.1996) (if a party resists summary judgment by pointing to a factual dispute on which it bears the burden at trial, that party must point to evidence affirmatively tending to prove the fact in its favor); *Nance*, 881 F.Supp. at 225 (where attorney avers that debt collection only represents a small fraction of his law firm's practice, summary judgment was warranted because plainitff presented no "contrary evidence").

L. Camara has given this Court no reason to question Fleury and the law firm's figures—such as an advertisement or yellow pages listing touting the firm's facility with debt collection; a speciality listing in an attorney guide such as Martindale–Hubbell; membership in a creditor or debt collection attorney organization; or any other suggestion of any kind that the 4.57% is deceptive or incorrect. Instead, plaintiff states, without evidentiary support, that "more likely than not," the other categories of litigation matters listed in the affidavit[5] may include trying to collect a consumer debt through litigation. [document # 27]. This speculation runs directly counter to defendant's sworn affidavit that the other litigation categories do not involve consumer debt collections.

This Court addressed the issue of whether a law firm's alleged under-representing of consumer debt collection cases is a materially disputed fact in *Argentieri v. Fisher Landscapes, Inc.*, 15 F.Supp.2d 55, 60–61 (D.Mass.1998). In *Argentieri*, I found defendants' assertions dispositive,

---

**5.** Zajac divides litigation into a number of categories: consumer debt collections, personal injury, employment, commercial debt collections, other business litigation, consumer protection, miscellaneous, real estate litigation. [document # 25].

and concluded that, as here, in order for plaintiff to prove that defendants' are debt collectors under the Act, the plaintiff would "require unfettered access to [defendant and his law firm's] files, billing records, and client information. Absent a more compelling argument that [defendants' calculation] could be recast to show that debt collection is a regular or principal part of his business, I will not open that door." *Argentieri*, 15 F.Supp.2d at 61. It is true that the amount of admitted debt collection work is ten times higher here than in *Argentieri*, but this distinction is not enough to create a difference—the 4.57% figure given by the defendants still does not approach an amount which, without more, would put this case under the umbrella of the FDCPA.

In *Argentieri*, I noted that I resisted allowing the discovery in part out of a serious concern that this Act can be used as a bad-faith strategic mechanism of litigation. It is significant that the events which have brought these parties into Federal Court sprung out of a bitter divorce and custody dispute in state court, which has featured animosity between the attorneys and led to efforts by defense counsel to have plaintiff's counsel removed from the state court proceedings, and by both R. and L. Camara to have their ex-spouse's attorneys disciplined by the Board of Bar Overseers.

I would not then, and I will not now, allow the FDCPA "to become an arrow in the quiver of bad faith strategic maneuvers." *Id.* Without something more concrete than speculation and accusation, I will not permit the disruptive and intrusive discovery L. Camara seeks, or find defendants' conduct to fall under the Act with no evidence before the Court that it is applicable. Based on the information provided by Zajac and Fleury in their affidavits, I conclude that there is no evidence on this record that defendants are "debt collectors" under the Act. Summary judgment for defendants is consequently warranted.[6]

### 2. *Did Fleury Submit a False Affidavit in Violation of Rule 56(G)?*

Ms. Camara argues that even if defendants' motion for summary judgment would otherwise be granted, this Court should deny the motion and impose sanctions against defendants under Rule 56(g) for having submitted a false affidavit. Plaintiff bases this argument on her claim that Fleury intentionally misrepresented the extent of his conversations with L. Camara in his affidavit to this Court [document # 24], because he failed to include the December 12, 2001, letter to L. Camara's counsel, and the discussions involving the debt at plaintiff's custody hearing. Rule 56(g) states:

> Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offend-

---

6. It is worth noting that even if Fleury and the law firm were found to be "debt collectors" under the Act's definition, the FDCPA would still not apply to the facts alleged by L. Camara, because the debt alleged likely does not qualify as a consumer debt as defined by the Act. 15 U.S.C. 1692a. This is true wheth-er the debt is viewed as arising out of the original agreement with the business landlord, or as arising out of the separation agreement. However, because failure to satisfy the "debt collector" requirement of the Act removes this case from the FDCPA, I need not address that issue in any further detail.

ing party or attorney may be adjudged guilty of contempt.

 Defendants respond that the affidavit was not motivated by bad faith, and that Fleury's affidavit solely focuses upon his direct attempts to collect the alleged debt from L. Camara, since only that behavior would be covered by the FDCPA if it were to apply. I agree. His decision not to include the December 12, 2001 letter in his affidavit plausibly, and in fact likely, stems from the fact that the letter would not be significant in an FDCPA analysis, since it was sent to L. Camara's attorney rather than to plaintiff directly. I find no evidence that Fleury's affidavit was motivated by bad faith or warrants application of Rule 56(G).

### B. *The State Law Claims*

Counts II–IV—under the Massachusetts Fair Debt Collection Practices Act, and for intentional and negligent infliction of emotional distress—are all state law claims, and are currently in Federal Court through supplemental jurisdiction because of their connection to the federal claim—Count I. With the grant of summary judgment on count I removing the only federal issue from the case, it is no longer necessary or appropriate for the state claims to be heard in a federal forum. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") *Id.*

### III. *CONCLUSION*

For the above stated reasons, defendants' Motion for Partial Summary Judgment [document # 21] is **GRANTED**, and the remaining state law claims are **DISMISSED**.

**SO ORDERED.**

## JUDGMENT & ORDER OF DISMISSAL

The defendants in this case move for partial summary judgment with regard to Plaintiff's count I. For the reasons set forth in the accompanying Memorandum, Defendant's Motion [document # 21] is **GRANTED**. Plaintiff's remaining state law claims (# II–IV) are **DISMISSED** without prejudice, so that they may be brought in state court.

**JUDGMENT for the Defendants.**

**SO ORDERED.**